# EXHIBIT A

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement"), is made and entered into by and between Ohio Rental Mt. Vernon, Inc. ("ORMV"), Jay Maners ("JM"), and Angelina Maners ("AM") (collectively, ORMV, JM and AM shall be referred to as the "Company"), on the one hand, and Kaleb Myers and his respective heirs, executors, administrators, agents, successors and assigns ("Myers"), on the other hand.  The Company and Myers are sometimes collectively referred to herein as the "Parties" and individually as a "Party."

## RECITALS

**WHEREAS**, on or about August 2, 2017, Myers commenced a collective and class action lawsuit captioned *Kaleb Myers v. Ohio Rental Mt. Vernon, Inc., et al.,* Case No. 2:17-CV-679 (Judge Algenon L. Marbley) in the U.S. District Court, Southern District of Ohio, Eastern Division, alleging violations of the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act (the "Lawsuit"); and

**WHEREAS,** the Company has denied and continues to deny Myers's claims in the Lawsuit, as well as any and all other illegal, unlawful or wrongful conduct and/or liability of any kind relative to Myers or other employees of the Company; and

**WHEREAS**, the Company and Myers have agreed, in order to avoid the burden, expense and uncertainty of continuing the Lawsuit, to compromise, settle and resolve with finality the Lawsuit, any and all claims that were or could have been included therein.

**NOW, THEREFORE,** in consideration of the foregoing and the other covenants and commitments set forth herein, Myers and the Company agree and stipulate as follows:

Section 1. <u>Presentation of Agreement</u>.  Myers acknowledges and agrees he was presented with this Agreement through his attorneys, Peter Contreras and Matthew J.P. Coffman, he has carefully read and considered this Agreement and knows its contents, and he is signing this Agreement knowingly and voluntarily, with a full understanding of its significance and intending to be legally bound by its terms.

Section 2. <u>Consideration and Dismissal of Lawsuit</u>.  In consideration for this entire Agreement, including the dismissal with prejudice of the Lawsuit in its entirety and the release and waiver of any and all other claims, causes of action, demands or disputes that Myers believes he has or may have against the Company and/or its owners, including JM and AM, or its officers, managers, employees, successors, assigns, predecessors, parents, subsidiaries or affiliates, individually or collectively, including but not limited to all claims relating to Myers's employment with the Company, his pay and benefits during such employment and/or his separation from such employment, the Company will pay Myers and the two (2) Opt-Ins, Levi Haines and Ryan Sheehan, a monetary settlement in the total gross sum of Thirty Two Thousand Three Hundred Thirteen Dollars and Eight Cents ($32,313.08) in payments as follows:

The settlement payment shall be apportioned as described in subsections (a), (b), and (c) of this Section of the Agreement and shall be provided to Myers's attorneys after (i) all necessary signatures to the Agreement have been obtained; and (ii) the necessary Court approval is

obtained.  The settlement payments described in this Section 2 are expressly conditioned on the Court's approval of this Agreement, and no settlement payment will be made prior to such Court approval.

Subject to approval by the Court, and in exchange for Myers's execution of this Agreement in which he expressly agrees to a general release of the Company for any and all individual, class, and collective claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature whether known or unknown, Myers will receive a Service Payment in the amount of $7,500.00. The Service Payment is being sought in recognition of Myers's service to Plaintiffs' Counsel and his contribution to achieving this Settlement and offers of payments by the Company to all eligible employees, and in exchange for his full release of all claims against the Company, JM, and AM. The Service Payment shall be made at the same time and in addition to Myers's Individual Payments as detailed immediately below.

The settlement payments shall be provided to Myers's attorneys in two (2) equal installments of half of the total gross sum as further described below. The first installment shall be paid upon Court approval of the Settlement. The second and final installment shall be paid on or before thirty (30) days from the Court approval of the Settlement. All payments will be mailed to Myers's attorney at the following address: **Contreras Law, LLC, 5805 Ivy Branch Dr., Dublin, Ohio 43016**.

The Parties agree to submit this Agreement to the Court for approval.  The parties agree that the Lawsuit is to be dismissed <u>with prejudice</u> and that the parties will bear their own costs other than as otherwise provided herein.

> (a)  **Myers:** A total payment of $10,120.78 as follows:
>
> <u>W-2 checks</u>: Two (2) installment checks totaling the gross amount of $1,210.39 prior to deductions, less withholdings for applicable employment, income and other taxes, shall be provided to Myers as compensation for alleged unpaid W-2 wages, including alleged unpaid regular or overtime wages, claimed under the FLSA and Ohio law in the Lawsuit. The first installment of $605.20 prior to deductions and/or withholdings shall be paid upon Court approval of the settlement. The second and final installment of $605.19 prior to deductions and/or withholdings shall be paid on or before thirty (30) days after Court approval of the Settlement.
>
> <u>1099 checks</u>: Two (2) installment checks totaling the gross amount of $8,910.39 shall be provided to Myers, from which no deductions or withholdings will be made, as compensation for alleged liquidated and/or compensatory damages claimed in the Lawsuit for damages under the OPPA and the FLSA, and for Myers's Service Payment as provided above. An IRS Form 1099-MISC shall be issued to Myers and the relevant taxing authorities in relation to such payment. The first installment of $4,455.20 shall be paid upon Court approval of the settlement. The second and final installment of $4,455.19 shall be paid on or before thirty (30) days after Court approval of the Settlement.

**Haines:** A total payment of $2,565.56 as follows:

W-2 checks: Two (2) installment checks totaling the gross amount of $1,182.78 prior to deductions, less withholdings for applicable employment, income and other taxes, shall be provided to Haines as compensation for alleged unpaid W-2 wages, including alleged unpaid regular or overtime wages, claimed under the FLSA and Ohio law in the Lawsuit. The first installment of $591.39 prior to deductions and/or withholdings shall be paid upon Court approval of the settlement. The second and final installment of $591.39 prior to deductions and/or withholdings shall be paid on or before thirty (30) days after Court approval of the Settlement.

1099 checks: Two (2) installment checks totaling the gross amount of $1,382.78 shall be provided to Haines, from which no deductions or withholdings will be made, as compensation for alleged liquidated and/or compensatory damages claimed in the Lawsuit for damages under the OPPA and the FLSA. An IRS Form 1099-MISC shall be issued to Haines and the relevant taxing authorities in relation to such payment. The first installment of $691.39 shall be paid upon Court approval of the settlement. The second and final installment of $691.39 shall be paid on or before thirty (30) days after Court approval of the Settlement.

**Sheehan:** A total payment of $1,826.74 as follows:

1099 checks: Two (2) installment checks totaling the gross amount of $1,826.74 shall be provided to Sheehan, from which no deductions or withholdings will be made, as compensation for alleged liquidated and/or compensatory damages claimed in the Lawsuit for damages under the OPPA and the FLSA. An IRS Form 1099-MISC shall be issued to Sheehan and the relevant taxing authorities in relation to such payment. The first installment of $913.37 shall be paid upon Court approval of the settlement. The second and final installment of $913.37 shall be paid on or before thirty (30) days after Court approval of the Settlement.

(b) As noted in Section 4 of this Agreement, Myers, Haines and Sheehan shall be responsible for all tax liabilities, obligations and/or consequences relating to this payment other than any obligations relating to the Company's portions of any FICA taxes.

(c) Payments in the total amount of Seventeen Thousand Eight Hundred Dollars and No Cents ($17,800.00) shall be provided to Myers's attorneys, Peter Contreras and Matthew J.P. Coffman, without deductions for tax withholdings or any other deductions, for attorneys' fees and costs pursuant to 29 U.S.C. § 216(b). Two (2) installment checks totaling the gross amount of $17,800.00 shall be issued, with the first installment of $8,900.00 to be paid upon Court approval of the settlement. The second and final installment of $8,900.00 shall be paid on or before thirty (30) days after Court approval of the Settlement.

These checks for attorneys' fees and costs shall be made payable to "Contreras Law, LLC" and mailed to: **5805 Ivy Branch Dr., Dublin, Ohio 43016**. An IRS

3

        Form 1099-MISC shall be issued to Contreras Law, LLC, and the relevant taxing authorities in relation to such payment and Contreras Law, LLC shall provide a completed and signed W-9 form to the Company's counsel prior to said payment being made.  As noted in Section 4 of this Agreement, Myers, along with his attorneys, shall be responsible for all tax liabilities, obligations and/or consequences relating to this payment.

    Myers, on behalf of himself and Opt-Ins Haines and Sheehan, acknowledges and agrees that the payments described in this Section 2 of this Agreement is in full and complete satisfaction of their claims for unpaid regular and/or overtime wages, as well as liquidated damages, under the FLSA and the payment described in Section 2(c) of this Agreement is in full and complete satisfaction of any claimed entitlement to attorneys' fees under the FLSA or otherwise and is a reasonable fee for such purposes. Myers, on behalf of himself and Opt-Ins Haines and Sheehan, accepts these amounts as a full, complete and satisfactory recovery on their FLSA claims in the Lawsuit.

    Section 3.    <u>No Consideration Absent Execution of this Agreement</u>.  Myers understands and agrees that he would not receive any of the consideration specified in Section 2 of this Agreement except for his dismissal with prejudice of the Lawsuit, his execution of this Agreement, and his strict compliance with the promises and commitments contained herein (specifically including the general release of all claims set forth in Section 6).

    Section 4.    <u>Taxation</u>.  Myers acknowledges and agrees that he is solely and exclusively responsible for any and all income and other tax liabilities, obligations or consequences which are or may become due and payable in connection with the payments being provided under Section 2 of this Agreement other than any obligations relating to the Company's portions of any FICA taxes.  Myers further acknowledges that, except for the mandatory tax withholdings on the amount specified in Section 2(a) of this Agreement, the Company makes no representations or warranties whatsoever concerning the potential tax obligations, liabilities and/or consequences associated with any portion of the settlement payment being provided hereunder.

    Section 5.    <u>Nonadmission of Liability/Wrongdoing</u>.  Myers acknowledges and agrees that the monetary consideration he is receiving from the Company pursuant to this Agreement is being provided solely in exchange for the compromise, settlement and dismissal with prejudice of the disputed claims in the Lawsuit, along with the other promises and covenants set forth in this Agreement.  Myers further acknowledges and agrees that the consideration described in Section 2 of this Agreement shall not under any circumstances be represented or construed as an admission of the validity of Myers's claims in the Lawsuit or of legal liability or wrongdoing of any kind by the Company or any of its owners, executives, officers, managers, employees, predecessors, successors, assigns, parents, subsidiaries or affiliates. Myers further acknowledges that the Company has denied and continues to deny any and all wrongful or unlawful conduct and/or liability with respect to Myers.

    Section 6.    <u>General Release of All Claims</u>.  Myers knowingly and voluntarily releases, waives and forever discharges the Company, JM, AM, and their respective predecessors, successors, assigns, insurers, parents, subsidiaries, divisions, related or affiliated

companies, and their respective current and former owners, shareholders, officers, directors, supervisors, managers, insurers, employees, representatives, attorneys, agents and assigns, both in their individual and representative capacities (collectively, "Released Parties"), of and from any and all claims, known and unknown, asserted or unasserted, which Myers has or may have against the Company and/or the Released Parties as of the date of execution of this Agreement, including, without limitation, any alleged violation of the The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as well as:

- Any other federal, state or local law, rule, regulation, or ordinance and the common law;
- Any claim for promissory estoppel, violation of public policy, infliction of mental or emotional distress, loss of consortium, invasion of privacy, false light, fraud, fraud in the inducement, negligence, intentional tort, breach of express or implied contract, or defamation; and/or;
- Any basis for recovering liquidated damages, costs, fees, or other expenses including attorneys' fees incurred in these matters.
- If any claim is not subject to full release/waiver based on applicable law or regulation then, to the extent permitted by law, Myers hereby waives any right, entitlement or ability to be a class or collective action representative, member or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim to which the Company or any other Released Party may be a party.

Further, Opt-Ins Haines and Sheehan as a result of their opting into this collective action release, waive and forever discharge the Company, JM, AM, and their respective predecessors, successors, assigns, insurers, parents, subsidiaries, divisions, related or affiliated companies, and their respective current and former owners, shareholders, officers, directors, supervisors, managers, insurers, employees, representatives, attorneys, agents and assigns, both in their individual and representative capacities (collectively, "Released Parties"), of and from any and all claims for any alleged violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and/or Ohio wage laws, or any other federal or state wage laws in any way relating to wages earned or owed to them by the Released Parties at any time during their employment.

Section 7. Neutral Employment Reference.  The Company agrees that, in response to any inquiries by potential employers of Myers, Haines, or Sheehan, the Company will provide a neutral employment reference consisting only of job position(s) held with the Company, hiring date, and employment termination date.

Section 8. Consequences of Breach.  Myers and the Company each acknowledge and agree that in the event that either of them should be determined by a court of competent jurisdiction to have breached or violated any provision of this Agreement, the breaching Party shall be subject to legal action for such breach or violation and may be held liable to the non-breaching Party for contractual and/or other legal or equitable remedies, including attorneys' fees paid to the prevailing party.

Section 9.   Governing Law and Interpretation.  This Agreement shall be governed and conformed in accordance with the laws of the United States and the State of Ohio without regard to its conflict of laws provisions.  Should any provision of this Agreement be declared illegal or unenforceable by a court of competent jurisdiction and such provision cannot be modified to make it enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

Section 10.   Amendment and Counterparts.  This Agreement may not be modified, altered or changed except by means of a writing that is signed by all Parties wherein specific reference is made to this Agreement.  This Agreement may be executed in two or more counterparts, each of which shall be taken to be one and the same document, with the same effect as if all Parties hereto had signed the same signature page.  A facsimile or electronic copy of any Party's signature shall be deemed as legally binding as the original signatures.

Section 11.   Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Parties hereto and, except as may be specifically stated otherwise herein, fully supersedes any and all prior agreements or understandings between the Parties, whether written or oral.  The Parties acknowledge that they have not relied on any representations, promises or agreements of any kind made to them in connection with their decision to accept this Agreement, except for those set forth in this Agreement.

WHEREFORE, by their signatures below, the Parties hereby indicate their acceptance of the terms of this Agreement:

**KALEB MYERS**

_____        _____
SIGNATURE                                                              Date


**OHIO RENTAL MT. VERNON, INC.**

_____*/s/ Angela Maners/*_____        _____*6/22/18*_____
By:                                                                          Date

____*CFO*____
Its:


**JAY MANERS**

_____*/s/ Jay Maners/*_____           _____*6/22/18*_____
SIGNATURE                                                              Date

**ANGELINA MANERS**

6

_____   _____6/22/18_____
SIGNATURE                          Date

Section 9. <u>Governing Law and Interpretation</u>. This Agreement shall be governed and conformed in accordance with the laws of the United States and the State of Ohio without regard to its conflict of laws provisions. Should any provision of this Agreement be declared illegal or unenforceable by a court of competent jurisdiction and such provision cannot be modified to make it enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

Section 10. <u>Amendment and Counterparts</u>. This Agreement may not be modified, altered or changed except by means of a writing that is signed by all Parties wherein specific reference is made to this Agreement. This Agreement may be executed in two or more counterparts, each of which shall be taken to be one and the same document, with the same effect as if all Parties hereto had signed the same signature page. A facsimile or electronic copy of any Party's signature shall be deemed as legally binding as the original signatures.

Section 11. <u>Entire Agreement</u>. This Agreement sets forth the entire agreement and understanding between the Parties hereto and, except as may be specifically stated otherwise herein, fully supersedes any and all prior agreements or understandings between the Parties, whether written or oral. The Parties acknowledge that they have not relied on any representations, promises or agreements of any kind made to them in connection with their decision to accept this Agreement, except for those set forth in this Agreement.

WHEREFORE, by their signatures below, the Parties hereby indicate their acceptance of the terms of this Agreement:

**KALEB MYERS**

_/s/ Kaleb Myers_        6-22-18
**SIGNATURE**        Date

**OHIO RENTAL MT. VERNON, INC.**

By: _____     Date: _____

Its: _____

**JAY MANERS**

_____     _____
**SIGNATURE**     Date

6